FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

MAY 17 2013

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BMO HARRIS BANK, N.A. successor to MARSHALL AND ILSLEY BANK, FSB aka M&I Bank, FSB,<br><br>    Plaintiff,<br><br>v.<br><br>ALI KALAMCHI, an individual; DOES I through V, inclusive; and ROE CORPORATION I through V, inclusive,<br><br>    Defendants.<br><br>_____<br><br>ALI KALAMCHI,<br><br>    Counterclaimaint,<br><br>v.<br><br>BMO HARRIS BANK, N.A. successor to MARSHALL AND ILSLEY BANK, FSB aka M&I Bank, FSB; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>    Counterdefendants. | 2:12-cv-1448-RCJ-GWF<br><br>**ORDER** |

Currently before the Court is BMO Harris Bank, N.A.'s Motion to Dismiss Counterclaim (#9).

## BACKGROUND

### I. Complaint

On August 15, 2012, Plaintiff BMO Harris Bank, N.A., successor to Marshall and Ilsley Bank also known as M&I Bank, FSB (the "Bank") filed a complaint against Defendant Ali

Kalamchi in this Court based on diversity jurisdiction. (Compl. (#1) at 1-2). The Bank was headquartered in Chicago, Illinois, and Kalamchi was a Delaware resident who owned real property in Clark County, Nevada. (Id. at 2).

The complaint alleged the following. (Id. at 3). On October 30, 2006, Kalamchi had executed a mortgage note in favor of the Bank and promised to repay the Bank in the amount of $1,003,782.00. (Id.). The note was secured by a deed of trust encumbering real property commonly known as 15 Rue Mediterra Drive, Henderson, Nevada 89011. (Id.). The assessor's parcel number ("APN") on the property was 160-23-313-002. (Id.). Kalamchi defaulted on the note. (Id.).

On September 29, 2011, the Bank recorded a substitution of trustee and appointed The Cooper Castle Law Firm, LLP ("Cooper Castle") as the trustee of the deed of trust. (Id.). That same day, Cooper Castle recorded a notice of default and election to sell with the Clark County Recorder's Office. (Id. at 4). The notice of default was mailed to Kalamchi via certified mail to the property's address and Kalamchi's home address. (Id.). On January 4, 2012, Cooper Castle recorded a notice of trustee's sale with the Clark County Recorder's Office. (Id.). Celine Dion, the highest bidder at the foreclosure sale, purchased the property for $150,000.01 leaving an outstanding deficiency balance in excess of $800,000 due and owing on the note. (Id.). On April 27, 2012, Cooper Castle recorded the trustee's deed. (Id.).

The complaint alleged five causes of action. (Id. at 3-7). In the first cause of action, the Bank alleged deficiency judgment pursuant to NRS § 40.455 and asserted that it was bringing the action within six months of the sale conducted on March 22, 2012. (Id. at 3-4). In the remaining causes of action, the Bank alleged breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment/quantum meriut, and declaratory relief. (Id. at 5-7). The Bank sought compensatory damages in excess of $800,000, a deficiency judgment pursuant to NRS § 40.455, contractual and statutory remedies, reasonable attorneys' fees, and costs. (Id. at 8).

II. **Counterclaim**

On September 17, 2012, Kalamchi filed an answer and counterclaim. (Answer (#6) at

2

1-9; Counterclaim (#6) at 10-19). The counterclaim alleged the following. (Counterclaim (#6) at 10). M&I was the lender to Kalamchi for the property located at 15 Rue Mediterra Drive. (*Id.*). The property was a parcel of undeveloped property located at Lake Las Vegas with an APN of 160-23-313-002. (*Id.* at 11). Kalamchi purchased the property in August 2005 and "made all required monthly payments to M&I from the date that the promissory note was executed until the time that [Kalamchi] entered into negotiations with M&I to complete a short sale of the [p]roperty." (*Id.*). In June 2011, Kalamchi listed the property for sale through a real estate agent and "was never in default on his loan from M&I Bank at any time prior to commencing short sale negotiations with M&I." (*Id.*).

Between June 2011 and March 2012, Kalamchi and his appointed agents were in discussions with M&I regarding a short sale. (*Id.*). M&I had spoken to Debbie Priebe, Kalamchi's authorized short sale agent, frequently to complete a short sale of the property and to negotiate any possible deficiency amount with the Bank. (*Id.*). M&I accepted an offer from a William Coleman to purchase the property and entered into negotiations with Kalamchi to finalize the short sale by addressing the potential deficiency amount following the short sale. (*Id.*). Coleman paid earnest money into escrow to purchase the property and he and Kalamchi awaited approval from M&I of the sale. (*Id.*). Coleman entered into contract to purchase the property in August 2011. (*Id.*).

Prior to completing the short sale negotiations with Kalamchi, M&I had recorded a notice of default and election to sell against a piece of property with APN 160-23-213-002 located at 31 Rue Mediterra, a neighboring property. (*Id.* at 12). The notice of default, certificate of foreclosure mediation, and notice of trustee sale were all recorded against APN 160-23-213-002. (*Id.*). No foreclosure documents were ever recorded against APN 160-23-313-002 located at 15 Rue Mediterra. (*Id.*).

In February 2012, M&I acknowledged that no foreclosure documents had ever been recorded against the property but claimed that the foreclosure documents recorded against a neighboring property were sufficient and that the APN on the foreclosure documents contained a typographical error that should have identified Kalamchi's property. (*Id.*). M&I

never provided Kalamchi "actual notice of its intent to foreclose" on the property. (*Id.*). In February 2012, Kalamchi continued discussions and negotiations with M&I regarding a short sale of the property and Coleman's agents continued to be in contact with M&I regarding the completion and closing of the short sale. (*Id.*). M&I representative, Timothy Palm, forwarded a short sale approval letter to Kalamchi on February 10, 2012. (*Id.*). As of February 10, 2012, there was no pending foreclosure sale set for the property. (*Id.*).

On February 24, 2012, Kalamchi made M&I aware of the fact that no foreclosure documents had ever been recorded against the property through verbal and written correspondence. (*Id.* at 13). Kalamchi's attorney notified M&I that any attempt to foreclose would be improper and not in compliance with Nevada law. (*Id.*). On February 27, 2012, Kalamchi's attorney informed M&I through email that if M&I intended to move forward with foreclosure proceedings it would first need to properly record foreclosure notices against the property. (*Id.*). Kalamchi requested that M&I inform he and his attorney of any attempts to foreclose on the property because they were not aware of any pending foreclosure sale date and had never received any notices related to a pending sale of the property. (*Id.*). Kalamchi "never received any notices relating to a sale that M&I allege[d] to have occurred on March 22, 2012." (*Id.*). Nobody from M&I informed Kalamchi or his agents about the March 22, 2012 trustee's sale prior to its occurrence. (*Id.*). M&I did not inform Coleman about the trustee's sale. (*Id.*).

In late March 2012, Kalamchi continued to make efforts to complete a short sale and spoke directly with Coleman to see if he would increase his offer on the property. (*Id.* at 14). Coleman sent M&I an increased offer on March 27, 2012. (*Id.*). Kalamchi sent Palm an email to inform M&I that Coleman was willing to increase the purchase price on the property from $115,000 to $210,000. (*Id.*). On March 27, 2012, M&I informed Kalamchi that the property "went to sale" on March 22nd and therefore it was "too late to do a short sale." (*Id.*). This was the first that Kalamchi "was made aware of a foreclosure sale of the Property." (*Id.*). As late as April 13, 2012, M&I told Coleman's real estate agents that a short sale was "still in play" and moving forward. (*Id.*). Even with the short sale pending and money in escrow, "M&I pulled the

4

rug out from under [Kalamchi] by attempting to sell the Property on March 22, 2012." (*Id.*). M&I claimed to have sold the property to Celine Dion for an auction price of $150,000.01 but Coleman or other buyers would have been willing to pay more than $210,000 for the property. (*Id.* at 15). The trustee sale "was not noticed, there was no listing of the Property on MLS or other real estate listing services, and no commercially reasonable steps were taken to maximize the value of the Property at a sale." (*Id.*). M&I was unable to record its purported "sale" of the property because of the incorrect APN listed in the documents and, after the recording documents had been executed, "M&I caused the recording documents to be altered illegally to show [Kalamchi's] Property's APN so that the County Assessor's Office would accept the documents." (*Id.*). The sale documents were recorded over a month after the purported trustee's sale. (*Id.*).

The counterclaim alleged four causes of action. (*Id.* at 15-18). In the first cause of action, Kalamchi alleged defective foreclosure because M&I never recorded a notice of default against the property, never provided any notice of trustee's sale for the property, and never gave actual notice to Kalamchi of the sale property prior to the sale date. (*Id.* at 15-16). Kalamchi alleged that the foreclosure sale was improper and defective because it did not follow Nevada law. (*Id.* at 16).

In the second cause of action, Kalamchi alleges fraud and misrepresentation. (*Id.*). Kalamchi alleged that between August 2011 and March 2012, M&I representatives spoke to his short sale agent and Coleman's real estate agent multiple times and always stated that the short sale was proceeding and took actions to continue to negotiate with Kalamchi to complete the short sale. (*Id.* at 16-17). Kalamchi justifiably relied on M&I's representations that there was a pending short sale. (*Id.* at 17). Without warning, M&I sold the property to Celine Dion for a lower price. (*Id.*). M&I concealed its plans to foreclose on the property without notifying Kalamchi and the foreclosure was done recklessly, maliciously, and with intent to harm Kalamchi. (*Id.*).

In the third cause of action, Kalamchi alleged negligent misrepresentation. (*Id.*). Kalamchi alleged that M&I knew or should have known that Kalamchi and Coleman were

relying on the pending short sale but went behind their backs anyway and sold the property without providing notice. (*Id.*).

In the fourth cause of action, Kalamchi alleged slander of credit. (*Id.* at 18). Kalamchi alleged that his credit rating and credit score had been irreparably damaged because damage to his credit from a foreclosure sale was much greater than any negative impact that would have resulted from a short sale. (*Id.*). Kalamchi sought general, consequential, incidental, expectational, special, and punitive damages. (*Id.* at 19).

The pending motion now follows.

## LEGAL STANDARD

Normally, a court's review of a Rule 12(b)(6) motion is limited to the complaint itself. *Carstarphen v. Milsner*, 594 F.Supp.2d 1201, 1207 (D. Nev. 2009). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed. R. Civ. P. 12(d). "A court may, however, consider certain materials–documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice– without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." *Carstarphen*, 564 F.Supp.2d at 1207 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. Finally, if adjudicative facts or matters of public record meet the requirements of Federal Rule of Evidence 201, a court may judicially notice them in deciding a motion to dismiss. *Id.* at 909; *see* Fed.R.Evid. 201(b) (A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.).

6

Affidavits and declarations are not allowed as pleading exhibits unless they form the basis of the complaint. *Ritchie*, 342 F.3d at 908.

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay,

bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. See *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## DISCUSSION

The Bank filed a motion to dismiss Kalamchi's counterclaim. (Mot. to Dismiss (#9) at 1). The Bank argues that Kalamchi's defective foreclosure claim is time-barred and must be dismissed under NRS § 107.080(5) & (6). (*Id.* at 6). The Bank asserts that the statute provides a statute of limitations within 90 days of the foreclosure sale with proper notice of the sale and 120 days of the foreclosure sale with actual notice (if there was no proper notice). (*Id.*). The Bank argues that Kalamchi received actual notice on March 27, 2012, and, thus, Kalamchi had to file his defective foreclosure claim by July 25, 2012. (*Id.* at 7). The Bank argues that Kalamchi's defective foreclosure claim is time-barred because he filed his counterclaim on September 17, 2012. (*Id.*). The Bank asserts, to the extent that Kalamchi raises a wrongful foreclosure claim, Kalamchi was in default when the sale occurred. (*Id.* at 8). The Bank argues that the foreclosure was not defective because it substantially complied with NRS § 107.080 and that an erroneous APN on recorded documents does not constitute defective foreclosure. (*Id.*). The Bank argues that it did not make any false representations to Defendant because on February 27, 2012, the Bank sent a very clear statement to Plaintiff that short sale negotiations were over. (*Id.* at 10-11). The Bank asserts that Kalamchi fails to plead fraud, misrepresentation, and negligent misrepresentation with Rule 9(b) specificity. (*Id.* at 12). The Bank contends that Kalamchi's claim for slander of credit fails because it made no false statements and Kalamchi's default and breach of the loan caused the negative impact to his credit rating. (*Id.* at 13).

In support of its motion to dismiss, the Bank attaches: (1) the mortgage note, (2) the deed of trust; (3) a substitution of trustee; (4) a notice of default and election/waiver of

mediation form; (5) a notice of trustee's sale; (6) an email thread between Timothy Palm to John Gutke, Kalamchi's attorney, dated February 27-28, 2012; (7) a letter from John Gutke to M&I dated April 2, 2012; (8) an affidavit from Jason Heft stating that he posted a copy of the notice of default on the property; (9) an affidavit from Jeanette Vignale stating that she posted a copy of the notice of sale on the property; (10) an affidavit from Heather Ebneter stating that she posted a copy of the trustee's sale in a public place; (11) an affidavit from Jason Heft stating that he posted a copy of the danger notice and promissory note on the property; (12) affidavits from an unidentifiable person stating that he or she mailed a copy of the notice of default and notice of trustee's sale to Kalamchi in Delaware and Nevada; (13) an affidavit of an unidentifiable person stating that he or she mailed a copy of the notice of default and election/waiver of mediation form to Kalamchi at 15 Rue Mediterra Drive; (14) an affidavit from Heather Ebneter stating that she published the notice of trustee's sale in Nevada Legal News three times; (15) a certificate of postponement from Heather Ebneter stating that she postponed the trustee's sale scheduled for January 24, 2012 to February 24, 2012 at the beneficiary's request; and (16) an affidavit from Timothy Palm. (*See* Exhibits (#9-1 through 9-15)).

In response, Kalamchi asserts that the Court should either convert the Bank's motion to dismiss into a summary judgment and review his exhibits or refuse to consider the outside documents. (Opp'n to Mot. to Dismiss (#10) at 2). Kalamchi argues that his defective foreclosure claim is not time barred because there was no notice letting him know that the property would be sold on March 22, 2012 and, thus, the Bank could not be in substantial compliance with Nevada law. (*Id.* at 11). Kalamchi asserts that his defective foreclosure claim is tolled because the Bank did not provide "any actual notice of a foreclosure sale prior to it occurring." (*Id.* at 12). Kalamchi asserts that his allegations of fraud and misrepresentation are pled with particularity and that whether the Bank made false representations is a question of fact. (*Id.* at 13-14). Kalamchi argues that M&I's failure to take reasonable steps to inform him of its intent to sell the property amounted to negligent misrepresentation if the failure was not intentionally fraudulent. (*Id.* at 15). Kalamchi asserts that he states the minimum facts to

sustain a claim for slander of credit. (*Id.* at 16). In the alternative, Kalamchi seeks leave pursuant to Rule 56(d) to conduct discovery because the Bank included affidavits and correspondence which Kalamchi has not had the full opportunity to investigate and conduct discovery on. (*Id.* at 17).

In support of its opposition, Kalamchi attaches the following exhibits: (1) his own declaration; (2) an email thread between John Gutke and Timothy Palm dated February 14 and 24, 2012; (3) an email thread between John Gutke and Timothy Palm dated February 27, 2012; (4) an email thread between John Gutke and Timothy Palm dated March 27, 2012; (5) an email thread between John Gutke and Timothy Palm dated March 27, 28 and 30, 2012; and (6) the declaration of John Gutke. (*See* Exhibits (#10-1 through 10-6)).

In reply, the Bank asserts that the exhibits attached to the motion to dismiss were incorporated by reference into the complaint and counterclaim. (Reply to Mot. to Dismiss (#11) at 3). The Bank asserts that Kalamchi's contracts and escrow with Coleman are irrelevant because it flatly rejected Plaintiff's final offer for a short sale. (*Id.* at 7). In support of its reply, the Bank attaches a letter from M&I to Kalamchi dated February 10, 2012. (*See* Exhibit (#11-1)).

As an initial matter, the Court finds that the Bank has submitted matters outside the pleadings in its motion to dismiss. The Court takes judicial notice of the mortgage note, deed of trust, substitution of trustee, notice of default, and notice of trustee's sale because they are matters of public record that meet the requirements of FRE 201. However, the Court finds that the emails, letters, and affidavits submitted by the Bank and Kalamchi are not incorporated by reference into the complaint and are outside the pleadings. The Court declines to convert this motion into one for summary judgment at this time and will proceed with the motion to dismiss by excluding the emails, letters, and affidavits submitted by the parties.

### I.   Claim One: Defective Foreclosure

Nevada law provides that a deed of trust is an instrument that may be used to "secure the performance of an obligation or the payment of any debt." Nev. Rev. Stat. § 107.080(1). Upon default, the beneficiary, the successor in interest of the beneficiary, or the trustee may

foreclose on the property through a trustee's sale to satisfy the obligation. Nev. Rev. Stat. § 107.080(2)(c).

The procedures for conducting a trustee's foreclosure sale are set forth in NRS § 107.080. To commence a foreclosure, the beneficiary, the successor in interest of the beneficiary, or the trustee must execute and record a notice of the breach and election to sell. Nev. Rev. Stat. § 107.080(2)(c). The trustee or other person authorized to make the sale must wait three months after recording the notice of default and election to sell. *Id.* § 107.080(2)(d). After the three month period, the trustee must give notice of the time and place of the sale. *Id.* §107.080(4). Under NRS § 107.080(5), a "sale made pursuant to this section may be declared void by any court of competent jurisdiction in the county where the sale took place if . . . [t]he trustee or other person authorized to make the sale does not substantially comply with the provisions of this section." *Id.* § 107.080(5)(a).

Pursuant to NRS § 107.080(5), a person challenging the sale, who received notice of the sale, must commence the action to void the sale within 90 days after the date of the sale. *Id.* § 107.080(5)(b). "If proper notice is not provided . . . to the person who holds the title of record on the date the notice of default and election to sell is recorded, . . . the person who did not receive such proper notice may commence an action pursuant to [NRS § 107.080(5)] within 120 days after the date on which the person received *actual* notice of the sale. *Id.* § 107.080(6) (emphasis added).

In this case, it is undisputed that the APN of the property at issue is 160-23-313-002 and that the street address is 15 Rue Mediterra Drive. (*See* Deed of Trust (#9-2) at 4). It is also undisputed that the substitution of trustee, notice of default, and notice of trustee's sale all contained the wrong APN of 160-23-213-002.[1] (*See* Substitution of Trustee (#9-3) at 2; Notice of Default (#9-4) at 2; Notice of Trustee's Sale (#9-5) at 2). Accepting the allegations

---

[1] The Court notes that the recorded deed of trust and notice of trustee's sale both contained the wrong APN but included the correct property address of 15 Rue Mediterra Dr., Henderson, Nevada 89011. (Deed of Trust (#9-4) at 2; Notice of Trustee's Sale (#9-5) at 2). The recorded notice of trustee's sale states that the trustor was Ali Kalamchi and that the trustee's sale was scheduled for January 24, 2012. (Notice of Trustee's Sale (#9-5) at 2).

11

in Kalamchi's complaint as true, Kalamchi defaulted on his loan once he started commencing short sale negotiations with M&I. (*See* Counterclaim (#6) at ¶ 8). As of February 2012, Kalamchi knew that M&I had attempted to record foreclosure documents against the property but informed M&I that the documents contained the wrong APN. (*See id.* at ¶¶ 12-13, 18-21). Kalamchi never received any notices relating to a trustee sale that occurred on March 22, 2012. (*See id.* at ¶ 22). On March 27, 2012, M&I informed Kalamchi that the property "went to sale" on March 22, 2012, and that March 27th was the first that Kalamchi had been made aware of the alleged foreclosure sale of the property. (*See id.* at ¶ 28).

Accepting Kalamchi's allegations as true, he did not receive proper notice of the foreclosure sale via NRS § 107.080. Although he did receive notice of the alleged foreclosure sale on March 27, 2012 from a bank representative, the Court finds that Kalamchi did not receive actual notice of the alleged sale until he received a copy of the trustee's deed upon sale confirming that M&I had indeed sold his property. Kalamchi alleges that M&I recorded the sale documents over a month after the purported trustee's sale. (*See* Counterclaim (#6) at 15). The Court finds that this delay is sufficient to toll the statute of limitations period. The Court finds that Kalamchi has filed a timely counterclaim for statutory defective foreclosure. The Court denies the motion to dismiss the first cause of action.

## II.   Claim Two: Fraud and Misrepresentation

In Nevada, the elements of fraudulent misrepresentation are: "(1) [a] false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998). The Court finds that Kalamchi fails to state a claim for fraudulent misrepresentation.

However, the Court finds that Kalamchi has stated a claim for fraudulent concealment. The elements of fraudulent concealment are: "(1) [t]he defendant must have concealed or suppressed a material fact; (2) [t]he defendant must have been under a duty to disclose the

fact to the plaintiff; (3) [t]he defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, that is, he must have concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than he would if he knew the fact; (4) [t]he plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; (5) [a]nd, finally, as a result of the concealment or suppression of the fact, the plaintiff must have sustained damages." *Nevada Power Co. v. Monsanto Co.*, 891 F.Supp. 1406, 1415 (D. Nev. 1995). Accordingly, the Court denies the motion to dismiss the second cause of action.

### III.   Claim Three: Negligent Misrepresentation

Nevada follows the definition of the tort of negligent misrepresentation from the Restatement (Second) of Torts § 552:

> (1) One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Barmettler*, 956 P.2d at 1387. "The difference between fraud and negligent misrepresentation is that a negligent misrepresentation is made without a reasonable basis for believing its truthfulness." *Scaffidi v. United Nissan*, 425 F.Supp.2d 1159, 1170 (D. Nev. 2005).

The Court finds that Kalamchi states a claim for negligent misrepresentation and denies the motion to dismiss the third cause of action.

### IV.   Claim Four: Slander of Credit

There are no cases in Nevada that set forth the elements of a slander of credit claim. However, both parties agree that a slander of credit claim requires a plaintiff to establish the general elements of defamation. (*See* Mot. to Dismiss (#9) at 13; Opp'n to Mot. to Dismiss (#10) at 16). The elements of defamation are: (1) a false and defamatory statement by a defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002).

In his opposition to the motion to dismiss, Kalamchi states that M&I's false statement was that the property "was properly foreclosed on when in reality Kalamchi was working on finalizing a short sale when the improper foreclosure sale occurred." (*See* Opp'n to Mot. to Dismiss (#10) at 16). Kalamchi asserts that his credit rating will be impaired due to M&I's improper reporting of a defective foreclosure. (*See id.*).

The Court finds that Kalamchi states a claim for slander of credit and denies the motion to dismiss the fourth cause of action. Accordingly, the Court denies the Bank's Motion to Dismiss Counterclaim (#9).

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that BMO Harris Bank, N.A.'s Motion to Dismiss Counterclaim (#9) is DENIED.

DATED: This 17th day of May, 2013.

_____
United States District Judge